IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**WILLIAM C.,**

      **Plaintiff,**

  v.                              **Civil Action 2:23-cv-3577**
                                       **Judge Edmund A. Sargus**
                                       **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, William C., brings this action under 42 U.S.C. § 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for social security disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 11), Plaintiff's Reply (ECF No. 12), and the administrative record (ECF No. 7). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.    BACKGROUND**

Plaintiff applied for DIB and SSI in March 2020, alleging that he has been disabled since February 1, 2020, due to COPD, diabetes, sleep apnea, bipolar, and agoraphobia. (R. at 186–87, 203.)[1] Plaintiff's applications were denied initially in February 2021 and upon reconsideration in August 2021. (R. at 62–99, 102–21.) Plaintiff sought a *de novo* hearing before an administrative

---

[1] Defendant did not include the SSI application in the Certified Administrative Record.

law judge ("ALJ"). (R. at 122–23.) Administrative Law Judge Noceeba Southern held a telephone hearing on January 26, 2023. (R. at 40–61.) Plaintiff, who was represented by counsel, appeared and testified at the hearing. (*Id.*) A vocational expert ("VE") also appeared and testified. (*Id.*) On February 2, 2023, the ALJ issued a partially favorable decision, finding that Plaintiff "was not disabled prior to January 29, 2023, but became disabled on that date and has continued to be disabled through the date of this decision." (R. at 14–39.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1–6.) This matter is properly before this Court for review.

## II. RELEVANT RECORD EVIDENCE

The Undersigned has thoroughly reviewed the Plaintiff's hearing testimony and statements to the agency as well as the relevant medical records as to Plaintiff's conditions and resulting limitations. Instead of summarizing that information here, the Undersigned will discuss it as necessary below.

## III. ADMINISTRATIVE DECISION

On February 2, 2023, the ALJ issued her decision. (R. at 14–39.) The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2025. (*Id.* at 19.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

2

had not engaged in substantially gainful activity since February 1, 2020, the alleged onset date. (*Id.*) At step two, the ALJ found that Plaintiff has had the following severe impairments: chronic obstructive pulmonary disease ("COPD"); a seizure disorder; diabetes mellitus; transient ischemic attack; obesity; and obstructive sleep apnea. (*Id.* at 20.) At step three, the ALJ found that since February 1, 2020, Plaintiff has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 21.)

Before proceeding to step four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, [the ALJ] finds that since February 1, 2020, [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [ ]he can occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; must avoid concentrated exposure to extreme cold, heat, humidity, fumes, odors, dusts, gases, poor ventilation, and other pulmonary irritants; must avoid hazards including moving machinery, heavy machinery, and unprotected heights; and must avoid commercial driving.

(*Id.* at 23.)

At step four, the ALJ determined that since February 1, 2020, Plaintiff has been unable to perform any past relevant work. (*Id.* at 29.) Transferability of job skills is not an issue in this case because Plaintiff's past relevant work is unskilled. (*Id.*) At step five, based on the VE's testimony, the ALJ concluded that prior to January 29, 2023, the date Plaintiff's age category changed to an individual of advanced age, considering his age, education, work experience, and

---

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

3

RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, such as a marker, routing clerk or router. (*Id.* at 30.) The ALJ concluded that after Plaintiff's age category changed, considering his age, education, work experience, and RFC, there are no jobs that exist in significant numbers in the national economy that Plaintiff could perform. (*Id.*) The ALJ therefore concluded that Plaintiff was not disabled prior to January 29, 2023, but he became disabled on that date. (*Id.*)

## IV.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d

270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

V.  **ANALYSIS**

In his Statement of Errors, Plaintiff raises one issue: the ALJ's RFC determination during the relevant period is inaccurate because she improperly classified Plaintiff's mental health impairments, identified as bipolar and depressive disorder, as non-severe.  (ECF No. 10 PageID 1902–08.)  Plaintiff argues that the ALJ's purported misclassification of his mental health impairments led to the ALJ assigning an incorrect RFC.  (*Id.* PageID 1902.)

The Commissioner asserts that substantial evidence supports the ALJ's decision that Plaintiff's mental health impairments were not severe.  (ECF No. 11 PageID 1913–25.)

As the Court of Appeals for the Sixth Circuit and this Court have observed several times, step two of the evaluation process is merely meant to "screen out totally groundless claims," and it is well settled that where an ALJ "considers all of a claimant's impairments in the remaining steps of the disability determination, any perceived failure to find additional severe impairments at step two '[does] not constitute reversible error.'"  *Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 597 (6th Cir. 2018) (citing *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987))); *see also Rosshirt v. Comm'r of Soc. Sec.*, No. 2:19-CV-3280, 2020 WL 4592393, at *3 (S.D. Ohio Aug. 11, 2020) ("Even assuming that the ALJ should have discussed plaintiff's alleged [impairment] at step two, any error from this omission was harmless. Step two is the means by which the

5

Commissioner screens out totally groundless claims, and is a '*de minimis* hurdle[.]'") (emphasis added) (internal quotations and citations omitted). Here, the ALJ found that Plaintiff had other severe impairments at step two of the evaluation process, and rightfully proceeded to the remaining steps of the disability determination.

That does not end the inquiry before the Court, however, because the ALJ must also consider both the severe and non-severe impairments in the remaining steps of the evaluation. *See Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Under the regulations, once the ALJ determines that a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps.") (citing 20 C.F.R. § 404.1545(e)); *see also White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 787 (6th Cir. 2009).

"When formulating an RFC, an ALJ must consider the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Kochenour v. Comm'r of Soc. Sec. Admin.*, No. 3:14-CV-2451, 2015 WL 9258609, at *6 (N.D. Ohio Dec. 18, 2015) (quotation marks and alteration omitted) (citing *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 388 (6th Cir. 2013) ("[T]he ALJ's assessment of residual functional capacity reflects a claimant's functional capacity in light of all his limitations, not just those that are severe.")).

The ALJ must do so because

> [w]hile a not severe impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a not severe impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

6

*May v. Comm'r of Soc. Sec.*, No. 2:19-CV-4479, 2020 WL 2059719, at *3–5 (S.D. Ohio Apr. 29, 2020) (quotation omitted) *report and recommendation adopted*, No. 2:19-CV-4479, 2020 WL 2494486 (S.D. Ohio May 14, 2020). Stated differently, "an ALJ's conclusion that an impairment is non-severe is not tantamount to a conclusion that the same impairment . . . does not impose any work-related restrictions." *Kochenour*, 2015 WL 9258609, at *6 (quotation omitted). Indeed, a step two analysis is distinct from the ALJ's obligation to consider the impact of Plaintiff's non-severe impairments in addition to and in conjunction with Plaintiff's severe impairments in assessing Plaintiff's RFC. *Katona v. Comm'r of Soc. Sec.*, No. 14-CV-10417, 2015 WL 871617, at *6 (E.D. Mich. Feb. 27, 2015) (citing *Johnson v. Colvin*, No. 3:13cv00301, 2014 WL 6603376, at *8 (S.D. Ohio Nov.19, 2014) ("Assuming this [analysis] suffices to support the ALJ's conclusion that Plaintiff does not have a severe mental impairment, this does not demonstrate that the ALJ considered Plaintiff's non-severe mental impairments at step four as required by law.")), *report and recommendation adopted*, No. 3:13cv00301, 2014 WL 7015188 (S.D. Ohio Dec.10, 2014).

Here, the ALJ's decision to not classify Plaintiff's mental health impairments as severe at step two does not constitute reversible error. The ALJ considered Plaintiff's non-severe mental health impairments throughout the rest of the evaluation process in conjunction with his severe impairments. *See Kestel*, 756 F. App'x at 597. For example, at step four, the ALJ considered Plaintiff's testimony regarding his mental impairments:

> The claimant alleged limiting effects due to symptoms of his physical and mental impairments. He testified to the following at the hearing unless otherwise specified. . . . Mentally, he reported depression and suicidal tendencies. He has difficulty leaving the home and going out in public, and he has trust issues around other people. To treat this condition, he goes to counseling approximately

7

> once a week, and has been going for about three years. He also takes prescription medication for his mental health.
>
> As for the activities of daily living, he lives alone and has a couple of friends with whom he socializes. He is able to go grocery shopping, but will do so at night to avoid people. He is able to ride his bike to the store or get a ride from a friend. He has had difficulty cleaning up around his house. He does not use public transportation. He indicated in a function report that he has no problem with personal care (Ex. 6E).

(ECF No. 7-2 PageID 46–47.)

The ALJ also considered medical opinions and prior administrative medical findings regarding his mental impairments:

> The State agency psychological consultant at the initial and reconsideration level opined that the claimant did not have a severe mental impairment, had all mild limitation in the B criteria, and thus did not assess a mental RFC (Ex. 3A, 4A, 7A, and 8A). These opinions are generally supported by the bulk of the objective medical evidence in the record, which supports no more than mild limitation during the period at issue. The undersigned finds the mental opinions persuasive, while adjusting some of the language therein to make it compliant with the Act.
>
> \*\*\*
>
> The undersigned considered the opinion of psychological consultative examiner, Amanda Conn, Psy.D. (Ex. 17F). Dr. Conn opined that the claimant has the ability to understand, carry out, and remember both simple and complex instructions; no limitations in his ability to sustain concentration and persist in work-related activities at a reasonable pace; some limitations in his ability to maintain effective social interactions with supervisors, co-workers, and the public; and is able to deal with normal pressures in a competitive work setting and has done so in the past. She further opined that he would be able to manage his own benefits. This opinion is persuasive overall as it suggests no more than mild limitation in any mental functional area. However, the record does support a mild limitation in each domain, and the portion of the opinion suggesting "some limitations" in social interaction is vague and of limited value.

8

> The undersigned also considered the statement from the claimant's own source Samantha J. Wright, LSW, MSW (Ex. 22F). Ms. Wright indicated she had been treating the claimant since July 25, 2019, and she opined that he had an impaired ability to work and then cited manic episodes and racing thoughts that would affect his understanding of information. She also indicated he struggles with concentration, pace, and interacting with others. This opinion is of limited value, and not persuasive, as it is vague as to the degree of limitation that might be expected and does not include a narrative description of the types of limitations the claimant may experience. This opinion is also not consistent with the opinions of either the State agency psychological consultants or Dr. Conn, who opined that no more than mild mental functional limitation was indicated.
>
> More recently, in January 2023, Ms. Wright opined that the claimant's mental impairments would cause racing thoughts, difficulty understanding others, and issues with pace, mood, and interacting with others (Ex. 28F). This opinion is also not supported by the normal mental status exams elsewhere in the record or the other opinions, and thus not persuasive. The undersigned does note that to the extent that this opinion suggests the claimant's mental condition has become worse as of January 2023, this is consistent with the later onset of disability as of this month, which is set out below.

(ECF No. 7-2 PageID 50–51.)

It appears that Plaintiff attempts to argue that the ALJ failed to consider Plaintiff's non-severe mental health impairments throughout the other steps of the sequential evaluation process. (ECF No 10. PageID 1907.)  Plaintiff, however, bases this argument on his allegation that "the ALJ did not account for any mental health impairments as there were no mental health limitations included in the residual functional capacity. Had the ALJ properly considered the impairments severe, the ALJ's residual functional capacity would have been materially different."  (*Id.* PageID 1907–08.)  While Plaintiff is correct that the ALJ must consider non-severe impairments in the remaining steps of the evaluation, he incorrectly conflates his

9

argument under step two and this requirement. As articulated above, the ALJ considered his non-severe impairments throughout the remaining steps of the evaluation.

For the foregoing reasons, the Undersigned finds that the ALJ did not commit a reversible error at step two of the evaluation process and that her decision is supported by substantial evidence.

## VI.　CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits prior to January 29, 2023. Based on the foregoing, it is therefore **RECOMMENDED** that Plaintiff's Statement of Errors (ECF No. 10) be **OVERRULED**, and that the Commissioner's decision be **AFFIRMED.**

## VII.　PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties its objections to the Report and Recommendation, specifically designating this Report and Recommendation and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that

defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: October 21, 2024                           */s/ Elizabeth A. Preston Deavers*
                                                 **ELIZABETH A. PRESTON DEAVERS**
                                                 **UNITED STATES MAGISTRATE JUDGE**